Good morning, your honor. Your honors, I have a request for you to request five minutes longer, if possible. I'm going to try to stop this driver, why don't you? Thank you, your honor. Your honor, this is a case where the law is about predictability. Somebody comes in with a bachelor's degree in business administration. The employer wants to sponsor them as a deputy controller. The USCIS uses definitions derived from the Occupational Outlook Handbook as a guide to determine whether that particular job requires a degree and gives us guidance as to what type of degree is required. So from a common sense point of view, a person that has a bachelor's degree in business administration and is sponsored for a deputy controller's job with the description of what a deputy controller does meets on its face the requirements for issuance of an H-1B, especially occupation. Does it matter that, in this case, you offer most of a level one or two certificate? I don't think so, because basically, Ben, what the government's decision is, if you were to take the law clerk's job for an H-1, something that we all on this court understand, seeing a big firm in San Francisco, as an example, is a much better financial capacity to pay that entry-level wage of a law clerk, which is clearly a specialty occupation, whereas a non-profit firm or a smaller operation is not that position. And yet the responsibilities of what a person does in a small law firm versus what one does in a big law firm should and most probably are the same. When I looked at the responsibilities described in this case for the application for this job, a lot of them looked like bookkeeping as opposed to accounting. Can you respond to that? Yes, Your Honor. With any job, there seems to be an overlap as to accounting jobs and bookkeeping jobs, particularly in a firm, more practically a mid-level firm, not a completely small firm, but a firm that's growing, you know, 40 employees. There's going to be overlap in that, and it is incumbent on us when we give the job description to tell the government what the person is going to do. And, yes, there will be that overlap. But I don't think that that discounts that. So we review the agency determination under what standard? Well, the government wants this arbitrary and capricious. What? This is in a procedure act. I'm an immigration lawyer. So maybe you can explain to me why we have agencies on GPs for jobs where there are people in the United States who can keep their employees. Well, yes, I don't have the details. I don't have too much of your time. As you understand, Mr. Trump is going to deal with that issue apparently if there's any press reports. But Congress is enacted to think that companies can bring in people without a distance to the labor market. Jobs that are called specialty occupation would typically require, as a minimum level of entry, a bachelor's degree in a related area. And if that job specifically requires a bachelor's degree in the related area, and that person has that bachelor's degree or the equivalent thereof, then that person should, and this is what Congress intended, should be entitled to an H-1B visa. And this idea of a byzantine or the government is arguing that because it doesn't say shall have, what it actually says is most have and some have master's degrees. I'm paraphrasing. It doesn't say people come in with a high school diploma and then gain experience. So would any bachelor's degree suffice? No, it has to be in a related area. Administration, accounting, those are areas specifically where people that work in controller-type jobs go into that. And the Occupational Outlook addresses that. So do you disagree that there's standard of living that's arbitrary and capricious? Well, in fairness we didn't address it in the brief, in our brief, but quite frankly, this was arbitrary and capricious. That is our standard of living. As I understand it, you're not contending that the agency made it legal to think that they applied the wrong statute or something like that. No, no. They interpreted the handbook and found out it's actually your act. That's your act. Your client didn't meet the requirements. Yes, I agree. I agree, but it's just, on its face, it's absolutely, diggers believe through common sense that somebody with a bachelor's degree in business administration applies for a deputy controller's job. And yes, there is overlap in the duties. That is the nature of the job. It's not qualified. It's not some esoteric, eclectic job that you have to go and look for. It's something very straightforward. And yet, the government, in terms of education, the recommended degree in business administration is a quarterly bachelor's degree. It's just a general purpose degree. It's not a special ed degree. But the Occupational Handbook says that you need to go into that with business administration. There are no, like, in universities here, controller degrees. I mean, if that becomes the standard, again, it defies common sense. I think there's two separate questions here. One is whether or not this applicant had qualifications. And the second one was whether the job required those qualifications, right? That's correct. The government raised that issue, although, in the District Court opinion, they went to the issue of whether or not the job itself requires. Right. And you've been talking a lot about what the qualifications of the applicant were, and the opinion below should be recorrected. But it just really wasn't, especially at the application. I agree. And the government, in its brief, has brought up the issue of qualifications. But, again, it goes to the way that the business manager of the USCIS, nowhere in the proceeding, when we initially filed the application, was the government worried about the woman's qualifications for the job. So, but I'm saying that's a silver bullet that we agree with. She was qualified for the job that you put her in. Would you address why that job was a specialty occupation? That job is a specialty occupation because it fits within the parameters of a general manager. It's generic, a big job. It has the deputy controller inside that job to do these things. Although the overlap in some bookkeeping are, by and large, a financial manager type of job in the position of deputy controller. So you'd have to demonstrate that the job she was going to fill was a, quote-unquote, financial manager job. Right. Which is the way that the OOH works. I end up, we end up in the position of deputy manager. No, no, no. It was consulted as a team manager of our corporation. So, no. And that's what keeps us involved. Absolutely. And you seem to be very human there. But, at some stage, common sense predictability. Well, I mean, here's the question. I think you need to address. The words financial manager and self-defining, are they? I don't know. You guys can just see what a financial manager was, and maybe we would probably have either different views of that. I don't know at all. So, why is the agency's decision that this job definition isn't quantified into manager arbitrary conditions? Other than the fact that you think it's something. So, when you put a deputy controller into the OOH computer, it will get you to financial manager. That's the generic occupation that that job title gets you to. And it's from that job title that you figure out what the requirements of the job are. Right. So, tell me why the, again, maybe I'm going to ask you this. You will. Tell me why the agency was arbitrary conditions in finding out that the job duties of the applicant were not those of a financial manager. Because the job, to me, to me the definition of the job duties that we're talking are the typical job duties of somebody that's in a controller type of position managing, dealing with financial reports, payroll, tax payments. But, to me, that type of thing, that's not something that a bookkeeper does. You said there's always an overlap between, say, bookkeeping and accounting. Does that make it harder for you to show that the way you looked at classification was arbitrary? It certainly does. I mean, again, getting back to trying to be practical, absolutely it does. Yes, it does require, there's like two ways about that. But, by and large, the definition of that job, preparing financial reports, dealing with budgeting, dealing with the regulatory environment on the taxes is not, per se, a bookkeeper's job. It's very new. I thought it was great. And it's not a request that you set up. So this is the honor. Thank you. Good morning, Your Honors. My name is Nathan Corp. I'm the Chief of the United States Department of Justice, representing the defendants in this case. The U.S. CIA is correctly denying the H1B FECO application in this case. And there's no evidence in the record that compels a different precedent. Well, so tell me what a financial manager is. A financial manager is defined as, as Hamilton just indicated, in the OOHO Commission on Bookkeeping, as someone who handles the set of financial and bookkeeping duties. And as I guess, their job description, not surprisingly, since that's the check counts that are going out, seems to match up pretty well to financial managers. But what's the evidence in the record that this applicant was clearly a financial manager? The defense in this case aren't disputing the conclusion that the individual's case is going to be a financial manager. The defendants point in the reason that the U.S. CIA has correctly denied this FECO application. It's because the job in question is not a specialty occupation. And to receive an H1B FECO, the job must be a specialty occupation or the requirement for a specialty occupation. There's a statutory requirement and a regulatory requirement. Your Honor, the regulatory requirement has four parts, and the job in this case meets none of those parts. Let's talk about the first requirement, Your Honor, that a bachelor's degree or higher, or a diploma, is normally required as a minimum. And the statute says that the bachelor's degree must be in a specific specialty. And the Postal Council this morning admits that the degree must be in a related area. There was some dispute below about that, Your Honor. The agency now has conceded. Here's the problem with this position today, Your Honor. If the listing for occupation can be satisfied with an educational background and a generalized degree, it is not a specialty occupation. But the handbook says bachelor's degree in finance, accounting, economics, or business administration is often a minimum in this handbook. This is a degree in business administration. Finance, Your Honor. Finance, yes. Her degree is in the appropriate areas, Your Honor. Her degree is, yes, Your Honor. And that goes to her qualification, which is the second point. So now I'm confused. So you agree that's a specialty degree, or do you agree that the visa seeker had a specialty degree? We believe that she has a diploma in that field, Your Honor. Whether she meets the qualifications to be a specialty occupational worker, has not been proven. So now you've misunderstood this, and now you're helping to confuse me. So it's probably my fault. There's two requirements here. One is that it be a specialty occupation, and the second one would be that the applicant be someone who's qualified to do the specialty occupation. And the government's position, I take it, is that neither of those are satisfied. That's correct, Your Honor. Tell me, let's focus on the applicant for the moment. She has a degree in finance. Why isn't she, why wouldn't she be qualified to be a financial manager? There are four criteria in the regulations, Your Honor, for someone to be qualified as a specialty occupation worker. The first is that she have an American bachelor's degree or higher in the civilian related field. She does not. She's an American? Yes, Your Honor. So American equivalent? Equivalent. Yes, Your Honor. Because very few applicants will have American degrees. So what did the agency find? That her degree was not the equivalent of a finance or business administration degree in America. That's correct, Your Honor. That's the second criteria. And the reason that they found that, Your Honor, is because the evidence did not prove that her degree was the equivalent. And she has a diploma, and the diploma says finance. And she has an evaluation from the foreign education evaluator or from the company that provides this evaluation. The problem is that that isn't sufficient evidence to satisfy the second criteria. What would the applicant have to have provided, in your view? In USCIS, Your Honor, the transcript would have done two things, Your Honor. First, it would satisfy the regulation that requires sufficient evidence to be provided that shows dates of attendance. The diploma does not show dates of attendance. It shows the last date of attendance, not the first date. And it showed that the transcript also would satisfy that regulation by showing the courses taken. We don't know what courses she took in her Irish university. So let me ask a more practical question. By the suits you set, did taking it satisfy all of these things? Could you apply again? I know that my immigration status, Your Honor, there are various bars to... Well, I mean, at least in terms of the H-1B visa. Is there anything that says once you've been turned down for one month, you can't apply again? Not at least, Your Honor. Because just like we were dealing with the immigration case last time, if somebody said to somebody hearing, gee, you need to have a transcript, nor will that person say, let's resist even if you're going to get a transcript. What happened here? The problem here, Your Honor, is that there are two independent baselines for denying the H-1B visa. So in your view, even if you showed up with a transcript, then so would finance courses. It wouldn't have mattered because you would have turned down another. So it would be futile, Your Honor, and it would have been futile even to issue a request for evidence earlier in the immigration process. Why would you otherwise have been turned down? Because, Your Honor, the specialty and the occupation in question is not specialty and occupation. Remember, Your Honor, there are two requirements. Right. And that's what I started asking people for, and I still need some help on this. You agree that the description of the job, matches the description in the handbook of financial manager. Yes, Your Honor. So is it the agency's finding that the actual job was not that of a financial manager? Yes, Your Honor. The problem here is that the OOH, which both parties agree is determinative of what criteria, institutional criteria required for a job, holds that this job can be satisfied with a business administration degree. Now, let's be clear. This does not make the job a menial job. This is an obscene job. But it's not specialty occupation. Why is that? Because if a job that you get with a generalist degree is a generalist job, it's not specialty occupation. So you're finding, the agency's finding, was not based on... In other words, if she had a different degree, let's assume that she had a transcript that showed that she had a degree in finance, then this would be a specialty occupation. No, Your Honor. She would be... She would be qualified to do this. But because this job could be done by somebody with less qualifications, you said, therefore it's not a specialty occupation. Because this job could be done by someone with a generalist degree, the job is a beginning generalist job and not a specialty occupation. Okay, now that I understand your position, what you do... I know that previous non-presidential decisions of the agency are non-presidential, but doesn't it show arbitrariness if the agency, in part, only says yes under certain circumstances, and then two years later it says no? No, Your Honor. First of all, I think Your Honor's referring to that published 2006 case. There are various reasons why that case is not determined on the outcome of the year. The first is that you don't... You can't just admit there's no rule to be drawn from that unpublished case. So it's not... Your Honor, what is the result to be drawn? You have somebody with a certain set of qualifications that applies for a certain job, and the agency says yes. And then two years later, according to your argument, you have somebody with exactly the same set of qualifications that applies for exactly the same sort of job that the agency says no. That's sort of the definition of arbitrary completion, so to speak. No, Your Honor, it's the definition of two unpublished cases coming to different outcomes. But if they come to different outcomes under the same facts, and we've got sort of oil in the pan, no, Your Honor, ask the district court below how this case and the court's determination of arbitrary completion action turns on facts of this case and a law to be implied in this case. How are the facts of this case different than the facts in 2006 cases? Facts, Your Honor, there's no real distinction. The OOH... Well, I just need that back. It's the same book, James. It's the same book, James. Every time. Every time. Every time, Your Honor, that is a significant difference. But, Your Honor, what we would argue is that to be arbitrary and capricious in this case, for this application to be arbitrary and capricious, there must be some misapplication of the law or of misapplication of the law. Your argument is that the fact that you're wrong already, that there's nothing to do with it? That's what our argument would be, Your Honor. And the facts here are that the government properly applied presidential BIA decisions about a job that requires a generalist educational background and not being a specialty occupation. That's one of my board's associates' BIA presidential decision. That was properly applied in this case. One of my board's associates is the reason. We know that this is not a specialty occupation. The reason the USDA hasn't properly denied these will be visa decisions. So then, no matter what your qualifications or the agency's position is, it doesn't matter because the job is not a specialty occupation job. Correct, Your Honor. And that's just on the first of these four problems. So I take it when you're saying that one agency or another agency, you take what you say is, we define whether the job is a specialty occupation job by the nature of the degree required to do it. That's one way to define it, Your Honor. There are four ways to define it. And this job only requires a business administration to be a qualified generalist degree. Correct, Your Honor. It's not just the government's litigating position. There's a key. Because in the apply, in what we think, let's say, we argue for the first time that a generalist degree, they argue that at maximum, they argue, excuse me, that a business administration is not a generalist degree. I'd like to cite from the court, and I've quoted Cliff Clark, a matter of length, 13-INM decision, 35, from 1968. And in that case, the agency, in a press conference decision, held that business administration is the general term that includes various occupations. There's the reasoning, Your Honor, that the plaintiff's argument is lacking to hold, for this court to hold, that a business administration degree is a generalist degree. Well, what more would the plaintiffs have to show to get a business administration degree? What additional material do they have to show? In this case, Your Honor, both parties agree that the OHB solves the definition of the educational prerequisites. There's really nothing they could have done, as long as the OOH said what it said about the business administration degree suffice for this job. For financial management. Correct, Your Honor. And they all agree this is financial management. Correct, Your Honor. So it's their doomsday to start by this language, that the idea that there's nothing they can do. Yes, Your Honor, there are, because this job is not a substantive occupation. That is the first of two determinations that USCIS must make. It's not the kind of job, You're saying, from which you can manage one BDT. Correct, Your Honor. So it's a job that does not require, may I, a specialized degree in education. That's right, Your Honor. And therefore, the agency's position is this application of a major endowment, even if it's one that had a PhD in accounting and finance. That's correct, Your Honor. I wanted to address one point the court made earlier, asking whether the level one wage was determinative in this case. The level one wage goes to another criteria for determining whether a job is a substantive occupation. Plaintiff's counsel this morning said, well, if you had a level one wage, that could mean that you could never have a substantive occupation. That's not true, Your Honor. The level one wage really makes it impossible to meet one of the four criteria. Right. There are other, if that criteria is not met, there are still ways to meet the substantive occupation definition. For example, a degree would be required, a license would be required in the field. And, for example, of a law clerk, a law license would be required. You agree with what he keeps saying? Yes, Your Honor. They don't make as much as you, but they're doing okay. They're doing okay, and they have a law license. And that is one way that they can meet the substantive occupation requirement, even when they're a level one wage. But you're saying that you have a level one wage and no license, and you cannot meet the substantive occupation requirement. Unless you can meet some other problem. Which is not an issue in this case. I was like, okay, this is Byzantine. It is Byzantine, Your Honor, and I have a flow chart of various criteria that are used. But based on this most straightforward application of statute, I'm going to further define my four criteria that define whether or not your job is substantive occupation. Under this standard of review, Your Honor, there's no evidence that compels a different result from what the state has reached, which is that this is not, again, on the substantive occupation. There are four criteria on the other hand to define whether complaining to the state government is entitled or qualified to be under the work of a substantive occupation. None of those were met, and there's no evidence under this standard of review that compels a different result. Just out of curiosity, Your Honor, I don't know where I'm directed, but in the fact that this was a part-time position, playing any part in the case is a good decision. I don't know, Your Honor. I know that the fact that it's a part-time application for a part-time position is pretty rare. I would think so, Your Honor. It does go, it does raise the grounds as to what reason why they're only being heard. There's people of all ages. Yes, right here. There are other questions on the occasion. Oh, sorry. Yes, sir. Your Honor, the administrative record will demonstrate that when the application was filed that they sent a request for further evidence, requested further evidence, and nothing questioned the evaluation of the beneficiary's decree. So there was a letter submitted from an organization that evaluates decrees that does that with the CV of the evaluator. And the USCIS in LaCounte and McGill took that and never questioned it. It only became an issue later on in the district court matter. And so it seems like, you know, they're going to move the goal, they're going to move the goal line after you complained about the decision. Again, they could have dealt with that if they had an issue. It's dealt with all the time. If they're worried about the evaluators, USCIS is worried about the evaluators equivalency, then they send a request for their evidence and they ask for a copy of the transcript, and they normally ask for a sealed copy of the transcript so that there is no issue. The evaluating company goes in and looks at the requirements of the foreign education, in other words, what subjects were required to obtain that decree. As an example, you will see from Great Britain, the decrees, what are called quantity surveying, which by ours, the term itself doesn't exist, as is the agency required to accept the evaluators' evaluation decree, as opposed to saying, thank you, but I'd also like to see the transcript correct. But they should have asked the question, because it is assumed that if they've taken the evaluation at the first level and made the decision on the case without questions, which is always at the second level, you're at a slide case. They've gotten it because, quite frankly, I believe because they had trouble defending the decision. It wasn't a specialty job. It wasn't a specialty occupation. So once they decided to deny it and then there was the appeal, then all of a sudden they're looking for everything else to fortify their positions to why it was denied when it could have been easily handled at the regional processing center where these cases are decided. And so it really goes on as simple as that. And if you don't believe that, we get the request for further evidence on these types of cases all the time. And as regards as to whether or not it's a part-time position, the H-1 visas clearly allow for part-time positions. So it wasn't like, it isn't like whether it's unusual or not, I mean, I can represent it. I've done it and I've had colleagues that have part-time positions all the time. I don't know the percentages of them. But the regulations clearly allow for part-time work. Thank you. Thank you. Anyway, you have nothing else to say? You don't have to. We appreciate your argument. We appreciate your argument. Thank you. Thank you. And so we'll take this kind of a discussion.
judges: Tashima, Hurwitz, Adelman